FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
APR 1 1 2013
DAVID J. MALAND, CLERK
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:13CR 94 |
| | § | Judge Schell |
| LAWRENCE MICHAEL DAY (1) | § | |
| DONNA SHIRLEY COBB (2) | § | |
| BRYAN JEROME SCOTT (3) | § | |
| MICHAEL JEROME EDWARDS (4) | § | |
| SCOTT CAMERON SHERMAN (5) | § | |
| DONALD LEE MATTOX (6) | § | |

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**Count One**

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Mail and Wire Fraud Affecting a Financial Institution in violation of 18 U.S.C. §§ 1341 and 1343)

**A. Introduction**

At all times material to this Indictment:

1. The defendant, **Lawrence Michael Day** ("**Day**"), owned, operated, and controlled Rampart MMW Inc. ("Rampart"). **Day** also controlled accounts in the name of Rampart MMW at BBVA Compass Bank ("Rampart account"), and Lawrence & CD DBA Red Rooster Distributing-Rampart ("Red Rooster account").

2. **Day** and DC, an individual known to the Grand Jury, owned, operated, and controlled together through a limited partnership agreement, DACOR L.P. ("DACOR"). **Day** and DC were identified as the limited partners and Rampart and PenTex Property Corp., were identified as the general partners. **Day**, DC, and BC, an individual known to the Grand Jury, also controlled an account in the name of DACOR L.P. at Frost Bank ("DACOR account").

3. The defendant, **Donna Shirley Cobb** ("**Cobb**"), worked at Title Texas, Inc., Federal Title, Inc., and Capital Title of Texas, LLC, as an escrow officer facilitating loan closings.

4. YS, an individual known to the Grand Jury, worked as an escrow officer facilitating loan closings at Regency Title Company, LLC, located at 17440 North Dallas Parkway, suite 124, Dallas, Texas, in Collin County, in the Eastern District of Texas.

5. A title company was a business that assisted sellers and buyers in closing property transactions by acting as a custodian of all funds involved. Title company employees, including escrow officers, facilitated loan closings by, among other things, preparing HUD-1 Settlement Statements ("HUD-1s"), ordering loan fund disbursements, ordering title commitments and policies, and generally coordinating with realtors, mortgage lenders, and mortgage brokers regarding information necessary to close the loans. Title company employees were paid fees for their services for every home loan closing facilitated.

6. A HUD-1 was a document, prepared by a title company and executed by a buyer and seller of real estate at a loan closing, that reflected all sums received from and disbursed to the borrower, seller, and the lending institution. Lending institutions relied on the HUD-1s to determine whether the funds they had loaned had been properly disbursed.

7. The defendant, **Bryan Jerome Scott** (**"Scott"**), processed loan applications as a licensed loan officer for Absolutely The Best Mortgage, Inc., a mortgage brokerage firm, that were submitted to lending institutions on behalf of buyers seeking to purchase residential properties.

8. The defendant, **Michael Jerome Edwards** (**"Edwards"**), processed loan applications as a loan officer for Alethes dba Amerinet, a mortgage bank, that were submitted to lending institutions on behalf of buyers seeking to purchase residential properties.

9. **Edwards** also owned, operated, and controlled BlueStar Rehab Services, LLC. **Edwards** controlled an account in the name of BlueStar Rehab Services at JP Morgan Chase Bank ("BlueStar account").

10. Mortgage banks and mortgage brokerage firms were businesses that assisted mortgage loan applicants in obtaining home–mortgage loans by gathering the financial information from the applicants and completing mortgage application forms for the loan applicants. The loan officers submitted the completed application forms to

lending institutions for approval to obtain mortgage loans for the applicants. Lending institutions paid fees to mortgage brokers and loan officers for their services when the mortgage loans were funded.

11. The defendant, **Scott Cameron Sherman** ("**Sherman**"), owned, operated, and controlled Artisan Operating, L.P. ("Artisan"), a home building company.

12. The defendant, **Donald Lee Mattox** ("**Mattox**"), obtained a construction loan for approximately $520,000 to build a house at 6205 Carlton Court, McKinney, Texas, in the Eastern District of Texas ("6205 Carlton Court Property"). **Mattox** also acted as a buyer on three other properties including (1) 211 Sandstone Drive, Prosper, Texas, in the Eastern District of Texas, (2) 7800 Kickapoo Drive, McKinney, Texas, in the Eastern District of Texas, and (3) 2719 Point View Drive, Cedar Hill, Texas. **Mattox** controlled an account at Comerica Bank ("Mattox's Comerica account").

13. JL, TL, JK, MM, DM, GA, AA, MA, SA, KS, CM, and MC were individuals known to the Grand Jury.

14. DB, an individual known to the Grand Jury, owned, operated, and controlled Buescher Interests, L.P., which was a home building company.

15. CJ, an individual known to the Grand Jury, owned, operated, and controlled Spiral Stair Companies, LLC. CJ was also the sales manager for DB.

16. The "1007 Native Trail Property" was a residence located at 1007 Native Trail in Heath, Texas.

17. The "1009 Native Trail Property" was a residence located at 1009 Native Trail in Heath, Texas.

18. The "2303 Cambria Drive Property" was a residence located at 2303 Cambria Drive in Dallas, Texas.

19. The "13342 Wimberley Drive Property" was a residence located at 13342 Wimberley Drive in Frisco, Texas, in the Eastern District of Texas.

20. The "400 Paint Pony Property" was a residence located at 400 Paint Pony Trail North in Fort Worth, Texas. **Day's** primary residence was the 400 Paint Pony Property.

21. Wells Fargo Bank, WFCCG-IA Wholesale DES, Security National Mortgage, Washington Mutual Bank, JP Morgan Chase Bank, Chase Home Finance, and IndyMac Bank, were lending institutions that made mortgage loans. Wells Fargo Bank, Washington Mutual Bank, and JP Morgan Chase Bank were financial institutions.

22. The following facts were material to lending institutions when determining whether to make a mortgage loans and how much money to lend:

a. that any fees or payments made out of the loan proceeds be fully disclosed to the lending institutions;

b. whether the loan applicant was going to occupy the mortgaged home as his/her primary residence;

c. how much monthly employment and rental income the loan applicant received;

d. whether the borrower had actually provided the down payment funds as indicated on the HUD-1s;

e. whether the loan proceeds were being distributed to parties other than the seller that were not reflected on the HUD-1s;

f. whether the gift letters submitted to the lending institutions were true and accurate;

g. whether the liens on the properties were true and accurate;

h. whether the invoices attached to the loan applications were true and accurate; and

i. whether the lease agreements submitted in support of the loan application were true and accurate.

**B. The Conspiracy**

23. From in or about September 2005, through on or about July 30, 2008, in the Eastern District of Texas and elsewhere, **Day**, **Cobb**, **Scott**, **Edwards**, **Sherman**, and **Mattox** knowingly and willfully combined, conspired and agreed together, and with other persons known and unknown to the Grand Jury, to devise a scheme and artifice to defraud lending institutions and to obtain money from the lending institutions by making materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice: (1) caused matter to be sent and delivered by the United States Postal Service and by private and commercial interstate carriers, a violation of 18 U.S.C. § 1341; and (2) caused writings, signs, and signals to be transmitted by means of wire communication in interstate commerce, a violation of 18 U.S.C. § 1343. Their actions affected one or more financial institutions.

**C. Purpose of the Conspiracy**

24. The purpose of the conspiracy was to defraud lending institutions by inducing them to fund mortgage loans by using material misrepresentations and omissions of material fact in the HUD-1s, the loan applications, and other loan documents.

**D. Manner and Means of the Conspiracy**

25. It was part of the manner and means of the conspiracy that **Day**, **Cobb**, **Scott**, **Edwards**, **Sherman**, **Mattox** and other persons known and unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, arranged for the following type of fraudulent transactions to occur:

a. **Day** recruited buyers, including **Mattox**, JK, CM, MA, SA, and MC, to purchase residences.

b. With the assistance of **Day**, loan officers, including **Edwards** and **Scott**, falsified material information on loan applications including the buyers' employment and rental income, assets, rental property information, and occupancy information.

c. Builders, including **Sherman**, **Mattox**, and DB, permitted the co-conspirators to overstate the amount of the actual purchase price the builders required to purchase the properties on the loan documents.

d. Escrow officers, including **Cobb** and YS, with the assistance of **Day**, **Edwards**, **Mattox**, and **Sherman**, caused the preparation of fraudulent HUD-1s that reflected false purchase prices, disbursements, and that the buyers, including JK, CM, MA, and SA, had provided the down payment funds.

e. The conspirators caused the fraudulent loan applications, HUD-1s, and other loan documents to be submitted to lending institutions, including Wells Fargo Bank, WFCCG-IA Wholesale DES,

Washington Mutual Bank, JP Morgan Chase Bank, Chase Home Finance, and IndyMac Bank, with the knowledge that the lending institutions would rely upon the materially fraudulent representations in funding the mortgage loans.

26. The conspiracy extended to transactions regarding the following properties:

| Street No. | Street Name | City and State |
|---|---|---|
| 400 | Paint Pony Trail North | Fort Worth, Texas |
| 1606 | Pantego Lane | Frisco, Texas |
| 750 | Creekwood Drive South | Fairview, Texas |
| 6020 | Sidewinder Trail | Fort Worth, Texas |
| 13342 | Wimberly Drive | Frisco, Texas |
| 11586 | Gatesville Drive | Frisco, Texas |
| 7004 | Quartermile Lane | Dallas, Texas |
| 146 | Tiara Trial | Fort Worth, Texas |
| 7800 | Kickapoo Drive | McKinney, Texas |
| 2719 | Point View | Cedar Hill, Texas |
| 211 | Sandstone Drive | Prosper, Texas |
| 153 | Park Place Circle | Cresson, Texas |
| 6205 | Carlton Court | Mckinney, Texas |
| 4410 | Meadowbrook Drive | Fort Worth, Texas |
| 4609 | South Riverside Drive | Fort Worth, Texas |
| 7128 | Denver City Drive | Forth Worth, Texas |
| 6413 | Fairview Drive | Watauga, Texas |
| 208 | Fountainview Drive | Euless, Texas |
| 628 | Palo Duro Drive | Hurst, Texas |

| | | |
|---|---|---|
| 10617 | San Simeon Lane | Fort Worth, Texas |
| 1007 | Native Trail | Heath, Texas |
| 1009 | Native Trail | Heath, Texas |
| 215 | Highpoint Drive | Murphy, Texas |
| 1246 | San Andres Drive | Frisco, Texas |
| 1701 | Cross Timbers Drive | Prosper, Texas |
| 2303 | Cambria Drive | Dallas, Texas |
| 143 | Park Place Circle | Cresson, Texas |
| 3804 | Kite Meadow Drive | Plano, Texas |

27. On or about the following dates with respect to the following properties, as representative of the manner and means of the conspiracy, the following co-conspirators took the following actions:

a. **<u>1007 Native Trail Property</u>**

1. On or about March 23, 2007, JL and TL, as investors, obtained a construction loan of approximately $492,000 for **Sherman** to build the 1007 Native Trail Property.

2. In or about January 2008, **Sherman** completed building the 1007 Native Trail Property.

3. In or about January 2008, **Sherman** caused the 1007 Native Trail Property to be listed for sale for approximately $500,000.

4. On or about January 25, 2008, JL and TL, as sellers, executed a sales contract with a forged signature for JK, the buyer, for the purported price of $700,000.

5. On or about April 23, 2008, **Edwards** and **Day** caused a fraudulent loan application that included false employment and rental income, a false list of real estate purportedly owned by JK, a false personal address, and a statement that **Edwards** had obtained the information from JK via a telephone interview, to be submitted to Washington Mutual Bank on behalf of JK requesting loans totaling $629,500 to purchase the 1007 Native Trail Property.

6. On or about April 23, 2008, **Day** and others caused a false lease agreement dated March 7, 2008, that stated the 1007 Native Trail Property was to be rented to MM and DM for $8,250 per month, to be submitted to Washington Mutual Bank.

7. On or about April 23, 2008, **Edwards** and others caused a false invoice that stated "completion of upgrades to above referenced property" for $175,651.73 to be submitted to Washington Mutual Bank.

8. On or about April 23, 2008, **Day**, **Edwards**, and YS, caused a false HUD-1 to be submitted to Washington Mutual Bank. The HUD-1 falsely stated that BlueStar Rehab Services, LLC was due $175,651.73 for completing the 1007 Native Trail Property and that JK had provided the $92,766.43 down payment.

9. On or about April 23, 2008, **Day**, **Edwards**, YS, and others caused Washington Mutual Bank to fund the mortgage loan to JK by transferring $624,866.32 by interstate wire from Florida to Oklahoma to Regency Title Company, LLC, in the Eastern District of Texas.

10. On or about April 23, 2008, YS, at Regency Title Company, LLC, in the Eastern District of Texas, transferred $175,651.73 by wire to **Edwards's** BlueStar account for the purported completion of the 1007 Native Trail Property.

11. On or about April 25, 2008, YS, at Regency Title Company, LLC, in the Eastern District of Texas, issued a check for $14,500 to Alethes dba Amerinet for **Edwards's** services as a loan officer on the transaction.

12. On or about April 25, 2008, **Edwards** withdrew $92,766.43 from **Edwards's** Blue Star account and purchased a cashier's check payable to Regency Title Company, LLC, for JK's down payment for the purchase of the 1007 Native Trail Property.

b. **<u>1009 Native Trail Property</u>**

1. In or about January 2008, **Sherman** completed building the 1009 Native Trail Property.

2. In or about January 2008, **Sherman** caused the 1009 Native Trail Property to be listed for sale for approximately $510,000.

3. On or about January 25, 2008, **Sherman**, acting as the seller for Artisan, executed a sales contract with a forged signature for JK, the buyer, for the purported price of $725,000.

4. On or about April 23, 2008, **Edwards** and **Day** caused a fraudulent loan application that included false employment and rental income, a false list of real estate purportedly owned by JK, a false personal address, and a statement that **Edwards** had obtained the information from JK via a telephone interview, to be submitted to Washington Mutual Bank on behalf of JK, requesting loans totaling $650,000 to purchase the 1009 Native Trail Property.

5. On or about April 23, 2008, **Day** and others caused a false lease agreement dated March 6, 2008, that stated the 1009 Native Trail Property was to be rented to GA and AA for $8,350 per month to be submitted to Washington Mutual Bank.

6. On or about April 23, 2008, **Edwards**, **Sherman**, and others caused a false invoice that stated "completion of upgrades to above referenced property" for $202,942.16 to be submitted to Washington Mutual Bank.

7. On or about April 23, 2008, **Day**, **Edwards**, **Sherman**, YS, and others caused a false HUD-1 to be submitted to Washington Mutual Bank. The HUD-1 falsely stated that BlueStar Rehab Services, LLC was due $202,942.16 for completing the 1009 Native Trail Property and that JK had provided the $96,285 down payment.

8. On or about April 23, 2008, **Day** withdrew $96,285 from **Day's** Rampart account and purchased a cashier's check payable to Regency Title Company, LLC, for JK's down payment for the purchase of the 1009 Native Trail Property.

9. On or about April 23, 2008, **Day**, **Edwards**, **Sherman**, YS, and others caused Washington Mutual Bank to fund the mortgage loan to JK by transferring $647,802.70 by interstate wire from Florida to Oklahoma to Regency Title Company, LLC, in the Eastern District of Texas.

10. On or about April 24, 2008, YS, at Regency Title Company, LLC, in the Eastern District of Texas, transferred $194,241.70 by wire to **Edwards's** BlueStar account for the purported completion of the 1009 Native Trail Property.

11. On or about April 24, 2008, YS, at Regency Title Company, LLC, in the Eastern District of Texas, issued a check for $15,832.50 to Alethes dba Amerinet for **Edwards's** services as a loan officer on the property transaction.

12. On or about April 28, 2008, **Edwards** transferred $253,483 from his BlueStar account by wire to **Day's** Rampart account for **Day's** role in the 1007 and 1009 Native Trail Property transactions.

13. On or about April 30, 2008, **Day** deposited a check for $61,000 from **Day's** Rampart account to the DACOR account.

c. **<u>13342 Wimberley Drive Property</u>**

1. On or about December 5, 2007, CJ, as a representative for the seller, executed a sales contract with forged signatures for MA and SA, the buyers, for the purported price of $440,000.

2. On or about December 31, 2007, **Day** and KS caused a fraudulent loan application that included false rental income, occupancy information, and the statement that KS had obtained MA's and SA's information via a telephone interview, to be submitted to IndyMac Bank on behalf of MA and SA, requesting loans totaling $396,000 to purchase the 13342 Wimberley Drive Property.

3. On or about December 31, 2007, **Day**, **Edwards**, YS, CJ, and DB caused a false HUD-1 to be submitted to IndyMac Bank. The HUD-1 falsely stated that MA and SA provided the $46,351.19 and the HUD-1 did not accurately list the disbursements of the loan funds.

4. On or about December 31, 2007, **Day**, **Edwards**, YS, CJ, DB, and others caused IndyMac Bank to fund the mortgage loan to MA and SA by transferring $404,486.42 by wire to Regency Title Company, LLC, in the Eastern District of Texas.

5. On or about January 3, 2008, **Day** purchased a cashier's check in the amount of $46,351.19 payable to Regency Title Company, LLC, for MA's and SA's down payment for the purchase of the 13342 Wimberley Drive Property.

6. On or about January 4, 2008, **Day**, **Edwards**, YS, CJ, DB, and others caused a fraudulent HUD-1 and other transaction documents to be sent by Federal Express, a commercial interstate carrier, from Regency Title Company, LLC, in the Eastern District of Texas, to IndyMac Bank at 1707 Market Place, Westway One Building, in Irving, Texas 75063.

7. On or about January 4, 2008, YS, at Regency Title Company, LLC, in the Eastern District of Texas, transferred $202,240.66 by wire to Buescher Interests, L.P.

8. On or about January 9, 2008, DB purchased a cashier's check for $72,800 payable to "Spiral Stair Co.'s LLC."

9. On or about January 11, 2008, CJ purchased a cashier's check payable to BlueStar Rehab Services for $101,800.

10. On or about January 14, 2008, **Edwards** transferred $80,000 from his BlueStar account by wire to **Day's** Rampart account.

d. **6205 Carlton Court Property**

1. In or about November 2006, **Mattox** caused the 6205 Carlton Property to be listed for sale for $720,000.

2. On or about December 5, 2006, **Mattox** and **Day** executed a sales contract for the 6205 Carlton Court Property for the purported price of $875,000.

3. On or about January 16, 2007, **Mattox** signed a Deed of Trust that falsely stated that DACOR was a "lender" that placed a lien of $147,500 on the 6205 Carlton Court Property.

4. On or about December 5, 2006, **Mattox** executed a sales contract with a forged signature for CM, the buyer, for the purported price of $875,000.

5. On or about April 30, 2007, **Scott** and **Day** caused a fraudulent loan application that included false income and occupancy information to be submitted to JP Morgan Chase Bank on behalf of CM, requesting a loan totaling $650,000 to purchase the 6205 Carlton Court Property.

6. On or about April 30, 2007, **Scott** and **Day** caused a fraudulent loan application that included false income and occupancy information to be submitted to Chase Home Finance on behalf of CM, requesting a loan totaling $200,000 to purchase the 6205 Carlton Court Property.

7. On or about April 30, 2007, **Day, Mattox**, and **Cobb** caused a false HUD-1 to be submitted to JP Morgan Chase Bank. The HUD-1 falsely stated that DACOR had a $147,500 lien on the 6205 Carlton Court Property for a previous debt. The HUD-1 also falsely stated that CM provided $32,320.34 for the down payment for the purchase of the 6205 Carlton Court Property.

8. On or about April 30, 2007, **Day**, **Mattox**, **Scott**, **Cobb**, and others caused JP Morgan Chase Bank and Chase Home Finance to fund the mortgage loan to

CM by transferring $651,706.29 and $202,000, respectively, by interstate wires from New York to Federal Title, Inc.'s account in Texas.

9. On or about May 1, 2007, **Cobb**, at Federal Title, Inc., issued a check in the amount of $147,500.00 payable to DACOR.

10. On or about May 1, 2007, **Day** deposited the $147,500.00 check in the Red Rooster account.

11. On or about May 1, 2007, **Day** purchased a cashier's check payable to Federal Title, Inc. in the amount of $32,320.34 for CM's down payment for the transaction.

12. On or about May 8, 2007, Federal Title, Inc. transferred $148,197.70 by wire to **Mattox's** Comerica account.

e. **<u>2303 Cambria Drive Property</u>**

1. On or about October 13, 2006, **Day** caused a Deed of Trust to be filed in Dallas County that falsely stated that **Day's** company, Rampart, was a "lender" and placed a lien in the amount of $199,200 on the 2303 Cambria Drive Property. CM's signature was forged on the Deed of Trust.

2. On or about January 18, 2007, MC, the buyer, executed a sales contract for the 2303 Cambria Drive Property with a forged signature for CM, the seller, for the purported price of $881,000.

3. On or about March 8, 2007, **Day** and others caused a false HUD-1 to be submitted to JP Morgan Chase Bank. The HUD-1 falsely stated that **Day's** company, Rampart, had a $124,212.58 lien on the 2303 Cambria Drive Property for a previous debt.

4. On or about March 8, 2007, **Day** and others caused JP Morgan Chase Bank and Chase Home Finance to transfer $650,245.74 and $187,884.75 respectively by wire to Federal Title, Inc.

5. On or about March 14, 2007, **Day** and others caused a fraudulent HUD-1 and other transaction documents to be sent by Federal Express, a commercial interstate carrier, from Federal Title, Inc., at 4150 International Plaza, Suite 600 in Fort Worth, Texas 76109 to JP Morgan Chase Bank at 6565 North MacArthur Boulevard, Suite 160, in Irving, Texas 75039.

6. On or about March 14, 2007, **Cobb**, at Federal Title, Inc. transferred $124,212.58 by wire to DACOR.

f. **400 Paint Pony Property**

1. On or about May 10, 2007, **Day**, as seller, executed a sales contract with a forged signature for JK, the buyer, for the purported price of $499,000.

2. On or about June 26, 2007, **Day** and **Scott** caused fraudulent loan applications that included false occupancy information to be submitted to Wells Fargo Bank and WFCCG-IA Wholesale DES on behalf of JK, requesting loans totaling $495,000 to purchase the 400 Paint Pony Property.

3. On or about June 26, 2007, **Day**, **Cobb**, **Scott**, and others caused Wells Fargo Bank and WFCCG-IA Wholesale DES to fund the mortgage loans to JK by transferring $372,038.64 and $123,750 respectively by wire to Federal Title, Inc.

4. On or about June 26, 2007, **Day**, **Cobb**, and others caused a false HUD-1 to be submitted to Wells Fargo Bank. The HUD-1 falsely stated that JK had provided the $5,000 down payment and that $1,520.24 had been disbursed to JK as the borrower.

5. On or about June 29, 2007, **Cobb**, at Federal Title, Inc., transferred $122,584.31 by wire to **Day's** Rampart account as the seller's proceeds.

6. On or about July 2, 2007, **Day**, **Cobb**, and others caused a fraudulent HUD-1 and other transaction documents to be sent by Federal Express, a commercial interstate carrier, from Federal Title, Inc. to Wells Fargo Bank at One Home Campus, MAC X2303-013 in Des Moines, Iowa 50328.

**<u>Counts Two and Three</u>**

Violation: 18 U.S.C. §§ 1343 and 2
(Wire Fraud Affecting a Financial
Institution and Aiding and Abetting)

**A. The Scheme and Artifice to Defraud**

1. The Grand Jury realleges paragraphs one through twenty-seven of Count One of the Indictment as if fully set forth herein, and further states that between in or about January 2008, and on or about April 28, 2008, in the Eastern District of Texas and elsewhere, **Day**, **Edwards**, **Sherman**, and others known and unknown to the Grand Jury,

aided and abetted by one another, devised and intended to devise a scheme and artifice to defraud the lending institutions, and to obtain money and property from the lending institutions by materially false and fraudulent pretenses, representations, and promises. Their actions affected a financial institutions.

**B. Execution of the Scheme and Artifice**

2. On or about the following dates and for the purpose of executing and attempting to execute the scheme and artifice to defraud, **Day**, **Edwards**, **Sherman**, and others known and unknown to the Grand Jury, aided and abetted by one another, caused to be transmitted in interstate commerce, by means of a wire communication, the following signs, signals, and sounds:

| **Count** | Date | Property | Wire |
|---|---|---|---|
| 2 | April 23, 2008 | 1007 Native Trail in Heath, Texas | Loan fund transfer of $624,866.32 by wire from Florida to Oklahoma to Regency Title Company, LLC, in the Eastern District of Texas |
| 3 | April 23, 2008 | 1009 Native Trail in Heath, Texas | Loan fund transfer of $647,802.70 by wire from Florida to Oklahoma to Regency Title Company, LLC, in the Eastern District of Texas |

Each Count in violation of 18 U.S.C. §§ 1343 and 2.

## Counts Four and Five

Violation: 18 U.S.C. §§ 1028A
(Aggravated Identity Theft)

On or about the following dates, in the Eastern District of Texas, **Day** did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, JK's social security number, date of birth, and driver's license, during and in relation to violations of 18 U.S.C. §§ 1343 and 1349 (wire fraud and conspiracy to commit wire fraud, respectively), as alleged in Counts One through Three of this Indictment, in connection with the following property transactions:

| Count | Name | Street No. | Street Name | City and State |
|---|---|---|---|---|
| 4 | JK | 1007 | Native Trail | Heath, Texas |
| 5 | JK | 1009 | Native Trail | Heath, Texas |

Each Count in violation of 18 U.S.C. §§ 1028A.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461

As the result of committing one or more of the offenses alleged in this Indictment, the defendants shall forfeit to the United States:

1. any property constituting, or derived from, and proceeds the defendants obtained, directly or indirectly, as the result of such violation; and

2. any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including but not limited to the following:

**Property Belonging to Lawrence Michael Day.**

Approximately $1,877,032.56 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offense alleged in this Indictment.

**Property Belonging to Michael Jerome Edwards.**

Approximately $150,210.43 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offense alleged in this Indictment.

**Property Belonging to Donald Lee Mattox.**

Approximately $165,197.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offense alleged in this Indictment.

**Substitute Assets**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all interest the defendants have in the above-described property is vested in and forfeited to the United States.

A TRUE BILL

[signature]

GRAND JURY FOREPERSON

JOHN M. BALES
UNITED STATES ATTORNEY

[signature]

CHRISTOPHER A. EASON
Assistant United States Attorney

11 April 2013
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:13CR |
| | § | Judge |
| LAWRENCE MICHAEL DAY (1) | § | |
| DONNA SHIRLEY COBB (2) | § | |
| BRYAN JEROME SCOTT (3) | § | |
| MICHAEL JEROME EDWARDS (4) | § | |
| SCOTT CAMERON SHERMAN (5) | § | |
| DONALD LEE MATTOX (6) | § | |

**NOTICE OF PENALTY**

**Counts One through Three**

Violations: 18 U.S.C. §§ 1349, 1343, 1341

Penalty: For each count: not more than thirty years imprisonment, a fine not to exceed $1,000,000; supervised release of not more than five years.

Special Assessment: For each count: $100.00

**Counts Four and Five**

Violations: 18 U.S.C. § 1028A

Penalty: For each count: two years imprisonment in addition to the punishment provided by the predicate felony; a fine not to exceed $250,000, or not more than the greater of twice the gross gain to the defendant or twice the gross loss to one other than the defendant, or both; supervised release of not more than one year.

Special Assessment: For each count: $100.00